UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

MARIN DUMITRESCU,

        Plaintiff,

  -against-

GENERAL MARITIME MANAGEMENT,
INC,. AND GENERAL MARITIME
CORPORATION,
        Defendants
--------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 15, 2009
```

ORDER
08 Civ. 5461 (PAC)

      HONORABLE PAUL A. CROTTY, United States District Judge:

      Defendants General Maritime LLC and General Maritime Management Corporation ("Defendants") move for judgment as a matter of law pursuant to Fed. R. Civ. Proc. 50 or, in the alternative, for a new trial pursuant to Fed. R. Civ. Proc. 59. They argue there was insufficient evidence to support a jury verdict in the amount of $790,000 in favor of Marin Dumitrescu, who worked as a seaman (fitter) on board the Defendants' vessel, the G.M.R. Conqueror.

      Mr. Dumitrescu, a Romanian national, 50 years of age, was hired to work on board the G.M.R. Conqueror. He had a pre-employment physical examination and found to be fit for duty. On July 11, 2005, he was assigned the task of fabricating a winch cover with another fitter. The two men had to turn the winch cover over to work on the opposite side. While doing so, the partially completed winch cover slipped. Mr. Dumitrescu pushed back on the cover to prevent its falling on him, but in doing so he claimed to have sustained a substantial injury to his back.

      On July 27, 2008, Mr. Dumitrescu filed an amended complaint asserting claims under the Jones Act, 46 U.S.C. § 668, and the Unseaworthiness doctrine of the General Maritime Law, see Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 258 (1922). The case was tried to a jury from

1

October 5, 2009 through October 7, 2009.  The jury returned its verdict on a special verdict form.  With respect to liability, the jury found that: (a) Mr. Dumitrescu had established that there was negligence under the Jones Act which played a part in his injuries; (b) Mr. Dumitrescu had failed to establish unseaworthiness; and finally (c) there was no contributory negligence.  With respect to damages, the jury calculated Mr. Dumitrescu's lost wages at $264,000; his past pain and suffering at $250,000; and his future pain and suffering at $1,000 per month for the balance of his life expectancy of 23 years for a total of $276,000.00.  The total award of damages was $790,000.

Defendants made timely motions pursuant to Rule 50 and Rule 59.  After reviewing the trial record and considering the parties' arguments, the Court concludes that there is ample evidence to support the jury verdict and, accordingly, the two motions are denied.

## Rule 50 Motion for Judgment as a Matter of Law

Judgment as a matter of law may be granted only where (1) there is such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result of sheer surmise or conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded people could not arrive at a verdict against the movant.  <u>Galdieri-Ambrosini v. National Realty & Development Corp.</u>, 136 F.3d 276, 289 (2d Cir. 1998).  In deciding a Rule 50 motion, the Court must view the evidence in the light most favorable to the party opposing the motion and must defer to all of the jury's credibility determinations and reasonable inferences.  <u>Id.</u>

Defendants challenge the jury's finding of Jones Act negligence.  Jones Act negligence requires plaintiff to establish by a preponderance of the evidence that (1) a dangerous condition existed on the ship; (2) the defendant shipowner was on notice of the dangerous condition and

should have reasonably anticipated the plaintiff might be injured by the dangerous condition; and (3) that if the shipowner was negligent, such negligence proximately caused the plaintiff's injuries. See Rice v. Atlantic Gulf & Pacific Co., 484 F.2d 1318, 1320 (2d Cir. 1973).

There is no doubt that in this trial record there is ample support for all the elements of Jones Act negligence. Dumitrescu testified that while he was lifting the winch cover, he felt cracks in his spine and pain shooting through his body (Tr. 30:4-15). Dumitrescu testified that before his lifted the winch cover, he complained to the ship's chief engineer that his assignment to secure a winch cover was dangerous because the winch covers were large and heavy and because the ship did not have hoisting equipment (Tr. 26:9-11; 94-95:3, 11-25). Dumitrescu's complaint put the Defendants on notice of the dangerous condition. Dumitrescu testified that rather than correcting the dangerous condition, the chief engineer instead threatened to drop him off at the nearest port if he refused to secure the winch cover (Tr. 26:12-14). Captain Joseph Ahlstrom, Dumitrescu's maritime expert, testified that the winch cover Dumitrescu was assigned to lift was heavy (up to 200-300 lbs) and that Dumitrescu's assignment was dangerous (Tr. 116-18, 124-28; 133-34). Captain Ahlstrom testified that that the chief engineer's response to Dumitrescu violated the International Safety Management Code ("ISM"), which applies to the GMR Conqueror (Tr. 116-18). Captain Ahlstrom further testified that Dumitrescu's accident was foreseeable and resulted from Defendants' negligence: under the ISM, Defendants should have performed a job analysis, should have briefed Dumitrescu on how to secure winch covers, and should have assigned more seamen and a supervisor to the task (Tr. 124-28; 133-34). Thus record evidence – the testimony of both Dumitrescu and Captain Ahlstrom – supports all the elements of a Jones Act negligence claim: existence of a dangerous condition (securing the heavy winch cover); notice (Dumitrescu's complaint to the chief engineer); and causation

(foreseeability through multiple ISM Code violations).

Dumitrescu has produced sufficient evidence regarding the Defendants' negligence; and Defendants have not produced any evidence, much less an overwhelming amount of evidence, that reasonable and fair-minded people could not arrive at a verdict against the Defendants. Accordingly, the Court denies Defendants' motion for judgment as a matter of law.

## Future Lost Earnings

Defendants also argue that the jury award for future lost earnings was not based on record evidence. This argument is meritless. Dr. Smallberg testified that lifting the winch cover on June 11, 2005 was a "career-ender" for Dumitrescu and that Dumitrescu will not return to work (Tr. 198-99). Dumitrescu testified that he cannot use tools and that he "cannot work at all" (Tr. 49:5). Dumitrescu further testified that he was earning $1,700 per month as a seaman aboard the GMR Conqueror (Tr. 45:6-8). Accordingly, the jury based its award of future lost earnings on record evidence, and the Court upholds the jury's award.

## Offset for Partial Pay

Defendants argue in the alternative that even if the Court affirms the jury's award for future lost earnings, they are still entitled to an offset of $10,200 for the half-pay sick-leave that Defendants' afforded Dumitrescu during the year following his June 11, 2005 accident (Tr. 78:21-25).[1] The jury was informed that Defendants had paid Dumitrescu $10,200, and the Court will not speculate on the reasons underlying jury verdicts. Accordingly, the Court will not disturb the award of a fully-informed jury; the jury might have already deducted the $10,200 in calculating their award.

Furthermore, the collateral source rule, which applies in Jones Act cases, bars the

---

[1] In their initial brief, Defendants also requested an offset for the amount Dumitrescu received from the Romanian government as part of a disability pension (Def. Br. at 15). However, in their reply brief, Defendants withdrew this request in light of the collateral source rule (Rep. Br. at 6).

4

reduction of an award by funds or benefits received from collateral or independent sources. King v. City of New York, 2007 WL 1711769, at *1 (S.D.N.Y. June 13, 2007).  Defendants argue that the collateral source rule does not apply here because the Defendants – and not a collateral third party – paid Dumitrescu.  But the collateral source rule is still applicable to these facts.  Even though the tortfeasor, rather than an independent and collateral source, already absorbed some of the cost of the harm, the collateral source rule nevertheless applies where the tortfeasor's payment results from a contractual obligation and not out of benevolence. See Klein v. United States, 339 F.2d 512, 517-18 (2d Cir. 196); Haughton v. Blackship, Inc., 462 F.2d 788, 791 (5th Cir. 1972) ("[W]here the employer-tortfeasor makes payment directly or indirectly into a fund established for an independent reason, or where such payment by the employer should be considered in the nature of fringe benefit or deferred compensation, the employer should not be entitled to benefit by setting off such income in mitigation of his responsibility as a tortfeasor").

      Here, Defendants have moved to partially offset the jury award because Defendants have already given Dumitrescu half-pay for the year following his accident.  But Defendants have failed to demonstrate that the sick-pay was given out of benevolence; indeed, Defendants were obligated to provide Dumitrescu with maintenance and cure. See generally, Calmar S. S. Corp. v. Taylor, 303 U.S. 525 (1938).  The duty to provide maintenance and cure is contractual, arising from a seaman's employment contract. See Cortes v. Baltimore Insular Line, 287 U.S. 367, 371 (1932) (characterizing the duty of maintenance and cure as "Contractual… in the sense that it has its source in a relation which is contractual in origin, but, given the relation, no agreement is competent to abrogate the incident").  Accordingly, the collateral source rule applies to Dumitrescu's half-pay sick-leave, and the Court denies Defendants' motion to offset Dumitrescu's award of damages for future lost earnings by $10,200.

### Future Pain and Suffering

Defendants argue that they are entitled to judgment on the issue of future pain and suffering because the jury's award for future pain and suffering was not based on testimony adduced at trial. Specifically, Defendants note that the record does not contain evidence that Dumitrescu presently experiences pain. This argument is meritless. Dr. Smallberg testified that on December 11, 2008, three and a half years after Dumitrescu's injuries, Dumitrescu complained of pain in his lower back, legs, neck and arm as well as numbness in his right hand and that Dumitrescu currently experiences pain because his back is not stable (Tr. 172; 230-31). Dumitrescu testified that he can no longer engage in many activities, including: bicycling; tennis; work; home repairs; plumbing; and marital relations (Tr. 48-49). Accordingly, the jury's award for future pain and suffering, which includes inability to enjoy life's pleasures, was based on record evidence.

Defendants also challenge the jury's award for future pain and suffering because the jury's calculation of life expectancy was based on a World Health Organization table showing life expectancy for Romanian males. The Court took judicial notice of the life expectancy table (Tr. 305). Defendants assert that this was error, arguing that life expectancy tables, even by respected organizations, are not subject to judicial notice. This argument is meritless. Obviously everyone has a life expectancy, and the expectancy is subject to statistical measurement. Rule 201(b) of the Federal Rules of Evidence allows for judicial notice of adjudicative facts "that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be challenged." This certainly includes life expectancy tables published by reputable organizations, especially where the table is detailed and specific. See Rofail v. United States, 2009 WL 1703236, at *16 (E.D.N.Y. June 18, 2009) (taking judicial notice of life expectancy

report in a Jones Act case). Accordingly, the Court upholds the jury's award of future pain and suffering.[2]

### Rule 59 Motion for a New Trial

Finally, Defendants argue that, pursuant to Rule 59 of the Federal Rules of Civil Procedure, the Court should order a new trial. New trial motions should be granted only where the jury has reached a seriously erroneous result or where the jury's verdict is a miscarriage of justice. Tesser v. Bd. of Education, 370 F.3d 314, 320 (2d Cir. 2004). As indicated previously, there is more than sufficient evidence to support the jury's verdict. Accordingly, the Court DENIES the Defendants' motion to set aside the verdict and for another trial. The clerk of the Court is directed to close this motion.

Dated: New York, New York
December 15, 2009

SO ORDERED

_/s/ Paul A. Crotty_
PAUL A. CROTTY
United States District Judge

---

[2] Defendants also argue that judicial notice of the World Health Organization life expectancy table was improper because Defendants did not have an opportunity to be heard, as required by Rule 201(e) of the Federal Rules of Evidence. This argument, too, is meritless. Defendants had notice that Dumitrescu would search for a life expectancy table which reflected the life expectancy of Romanian males, and Defendants had as much opportunity as the plaintiff to search for an appropriate table.